```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
```

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 04-10022-MEL |
| | ) |
| JENNIFER MARIE SHURTS | ) |

## DEFENDANT'S SENTENCING MEMORANDUM

### INTRODUCTION

Defendant Jennifer Shurts requests that this Court impose a sentence of probation with two special conditions: that Shurts serve three months of home detention and that Shurts continue her mental health treatment. Shurts relies upon the following in support of this request.

1. Dr. Deborah Sandy found that Shurts committed the instant offenses while Shurts' mental capacities were "significantly diminished" due to her mental illness, specifically Obsessive Compulsive Disorder. Ex. A, Report of Deborah Sandy, Clinical Psychologist at 20.

2. The United States hired a Harvard Medical School Professor and one of the leading authorities on OCD to conduct an independent evaluation of Shurts' mental condition with the intention of opposing any sentence below the applicable Guideline range. After this evaluation, the United States decided not to oppose Shurts' request for a downward departure and, if the Court allows the departure, to join in Shurts' request for a sentence of three years probation with three months home detention.

3.   Shurts has made tremendous progress in overcoming her illness through medication, psychotherapy and preventive changes in her behavior and activities.  See Ex. A and PSR generally.

4.   Shurts accepted responsibility for her offenses by waiving Indictment, pleading guilty to an information and making early payment of the agreed upon restitution of $70,829.49.

5.   Shurts is a 39 year old mother of two young boys.  She has no prior criminal record and she enjoys strong support from her hardworking law abiding family.  See Ex. B, Letters in Aid of Sentencing.

## STATEMENT OF FACTS

Shurts is a 39 year old mother of two boys aged 3 and 4. Her husband is a stay at home father caring for their children. Shurts launched her professional career as a part-time employee for UPS.  Even though she never finished college, Shurts succeeded at work.  By her early 30s, she was making a six figure salary as an Executive for a training and consulting company located in Boston.

Unfortunately for Shurts, she suffered from psychological and mental health problems from a very early age.  Shurts was the youngest of five children.  At age four Shurts experienced "apparent childhood psychosis" as she heard "'voices of other children playing' coming from the floor."  Ex. A, Sandy Report at 3.  Shurts' older sisters "'begged' their mother to seek

psychological help for" Jennifer but she refused saying "'Those people will mess her up more. Ignore it and it'll go away.'" Ex. A at 2. As detailed in Dr. Sandy's report, psychological problems plagued Shurts' childhood. Id. at 2-7. "Sadly, her mental problems went undiagnosed and untreated." Id. at 17.

By the time she began working for Communispace Shurts was in "a state of extreme emotional and financial distress." Ex. A, Sandy Report at 19. Although Shurts had functioned well in the world, she was a "terribly terribly ill person" according to Dr. Sandy's evaluation. Id. at 20. Her mental illness manifested itself in an inability to "evaluate reality" resulting in Shurts acting according to her "imagination." Id. at 18. Her mental illness also rendered her "desperate" to please others, id. at 19, and caused the development of a "false self" in which she hid "behind fabrications" of herself. Id. at 18-19. Although Shurts was "aware of the wrongfulness of her behavior," her "mental illness rendered her helpless to resist the recurrent pattern of behavior." Id. at 20.

Formal psychological testing reveals that Shurts suffers from severe depressive disorder and Obsessive Compulsive Disorder (OCD) both now and at the time of her offenses. Ex. A at 15. Fortunately, Shurts "can be rehabilitated" according to Dr. Sandy. Id. at 21. She is under the care of a medical professional treating her illness with both medication and

psychotherapy. Id. As a result she has developed insight into her problems. Id. Importantly, Shurts "feels tremendous relief that the lie is out and she no longer has to keep the secret to herself." Id. In short, Shurts is doing well.

## GUIDELINE CALCULATION

1. Loss Amount.

The parties agreed to a loss amount of $70,829.49 based upon commissions Shurts earned from fraudulent contracts and other benefits she received. Over the objection of both parties, Probation assigned a loss amount of $1,728,000. Probation calculated this number based upon the revenue Shurts' employers would have received if the fraudulent contracts had been real. For example, Shurts submitted fraudulent contracts to AchieveGlobal purporting to have made $425,000 in sales on behalf of AchieveGlobal thus Probation calculated a loss of $425,000.

For these AchieveGlobal contracts, the parties agreed upon a loss of $42,953.52 representing the commissions Shurts earned on the fraudulent contracts. Frankly, Probation's calculation makes no sense as the $425,000 was neither an actual nor intended loss of the fraud. Because the contracts were fictitious, i.e. the customer never knew of the existence of the contract, Shurts' employers never delivered under the contracts. There was no actual loss. Nor did Shurts ever harbor any intent to acquire for herself or anyone else the $425,000 in intellectual property

and services represented by the face value of these contracts. Thus, as explained in more detail in the parties' joint objection to Probation's calculation, PSR Addendum Gov't Objection #1 and Defense Objection #1, the Court should determine that the loss amount is $70,829.49.

    2.   <u>Acceptance of Responsibility</u>.

Probation declined to award Shurts a reduction for acceptance of responsibility because she committed her offense at AchieveGlobal while engaging in plea negotiations regarding her offense at Communispace. PSR paragraph 32. Shurts requests the Court to award her this reduction for several reasons.

First, Probation was unaware of the depth of Shurts' mental health problems at the time of the preparation of the PSR as it did not have the benefit of the report of Dr. Sandy. That report demonstrates that Shurts committed her offenses while suffering from diminished capacity. Ex. A at 19-21. According to Dr. Sandy, Shurts could not control "the irresistible nature of her impulses." <u>Id</u>. at 20. Thus, Shurts' subsequent offense at AchieveGlobal confirms the depth of her mental illness rather than revealing a failure to accept responsibility. <u>Id</u>.

Second, the Court determines whether Shurts has accepted responsibility at the time of sentencing. She clearly has done so. Shurts waived Indictment. Shurts pled guilty. Shurts fully cooperated in the sentencing process. Shurts paid $60,000 in

restitution last summer without any requirement of doing so and without receiving any quid quo pro from the Government for her action. And, Shurts has committed to paying the balance of the $70,829.40 in restitution by mid-March.

Third, Shurts has successfully brought her illness under control and started down the road of recovery.

All of these facts demonstrate that Shurts has accepted responsibility for her offenses.

    3.   <u>Guideline Calculation and Unopposed Departure</u>.

If the Court accepts the parties' joint loss calculation and if the Court awards Shurts' the reduction for acceptance of responsibility then she faces an advisory Guideline Zone C sentencing range of 10-16 months.[1] The Guidelines, however, authorize a downward departure for diminished capacity under § 5K2.13.

Shurts committed her offenses while suffering from a "significantly reduced mental capacity." Dr. Sandy found that Shurts' "mental illness rendered her helpless to resist the recurrent pattern of behavior now under investigation." Ex. A at 20-21.

---

[1] Shurts has no prior criminal record thus she falls in Criminal History Category I. The base offense level is 6 under 2B1.1, an 8 point enhancement applies for a loss exceeding $70,000 and a two point reduction for acceptance of responsibility.

Notably, the United States intended to oppose Shurts' anticipated request for a downward departure on this basis. See Plea Agreement attached to PSR. After receiving a copy of Dr. Sandy's report last summer, the United States hired Dr. Michael Jenike to conduct an independent evaluation of Shurts. Dr. Jenike is a Professor at the Harvard Medical School and one of the foremost authorities in the world on Obsessive Compulsive Disorder. Dr. Jenike reviewed Shurts mental health records, the report of Dr. Sandy and conducted his own independent evaluation of Shurts. After receiving the report of Dr. Jenike's evaluation, the United States (1) decided not to oppose Shurts' request for a downward departure and (2) if the Court departs, to make a joint recommendation with Shurts for a probationary sentence including three months of home detention. The Government's change in position demonstrates the veracity and merit of Shurts' request.

Thus, application of the Guidelines warrants the sentence Shurts' requests.

## SECTION 3553 FACTORS

Of course, in light of Booker v. United States, 125 S.Ct. 738 (2005), the Guidelines are only advisory. The Court must also consider all the factors enumerated at 18 U.S.C. § 3553 and impose a sentence which is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth

at § 3553(a)(2). The § 3553 factors also support the sentence Shurts' requests.

    1.   <u>Nature of the offense (§ 3553(a)(1))</u>.

The Court should consider that Shurts' criminal conduct was non-violent and her mental illness contributed substantially to her conduct.

    2.   <u>History and characteristics of the defendant (§ 3553(a)(1); 18 U.S.C. § 3661)</u>.

Shurts is a first time offender suffering from a serious mental illness since her early childhood. Until recently, she had received no treatment. With treatment she has been progressing well. Her prognosis is excellent especially in light of the strong family support she enjoys and the record of achievement she obtained even while ill.

    3.   <u>The need to "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(C)</u>.

Shurts submits she presents an especially low risk of recidivism. She led a law abiding life until well into her mid-30s. Her longstanding mental illness contributed substantially to her criminal conduct. Now that her illness is out in the open, that she is receiving treatment and that she is working on her recovery with the support of her family the risk of recurrence is small. Thus, incarceration is not necessary to "protect the public from further crimes of the defendant."

> 4. The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

Shurts needs mental health treatment. Presently, she is receiving that treatment. Her continued recovery would be best served by a continuation of that treatment while on probation, thus Shurts request for a special condition of probation requiring the continuation of her treatment.

> 5. The "kinds of sentences available" (§ 3553(a)(3)).

A probationary sentence best serves the public interest in this case. As described above, even under the Guidelines probation would be appropriate. Moreover, the factors under § 3553 also support imposition of that type of sentence.

> 6. The "need to provide restitution" (§ 3553(a)(3))

The parties jointly agreed to a restitution amount of $70,849.49. Last summer, on her own, Shurts paid $60,000 to the Clerk toward this restitution obligation by borrowing money against her home. Shurts is committed to paying the remainder of this restitution by mid-March. She will accomplish this by again refinancing her home, this time at a significantly higher interest rate.

CONCLUSION

For the foregoing reasons, Shurts requests that the Court impose a sentence of three years probation with special conditions requiring three months of home detention and mental health treatment as long as medically necessary.

JENNIFER MARIE SHURTS
By her attorney,

_____
/s/ Leo T. Sorokin, Esq.
Leo T. Sorokin, Esq.
  B.B.O. # 559702
Federal Defender Office
408 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Tel: 617-223-8061